

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JESSE WARD,

        Plaintiff,

-against-

COMPOUND ENTERTAINMENT LLC,

        Defendant.

18-CV-7268 (PGG) (BCM)

**REPORT AND RECOMMENDATION TO THE HON. PAUL G. GARDEPHE**

**BARBARA MOSES, United States Magistrate Judge.**

    Plaintiff Jesse Ward, a professional photographer with his principal place of business in Brooklyn, New York, filed this action under the Copyright Act, 17 U.S.C. § 101, *et seq.*, and the Digital Millennium Copyright Act, 17 U.S.C. § 1201, *et seq.* (DMCA), after defendant Compound Entertainment LLC (Compound) displayed one of Ward's copyrighted photographs on its website without permission, license, or payment. On June 11, 2019, the Hon. Paul G. Gardephe, United States District Judge, entered a default against Compound and referred the action to me to conduct an inquest into damages. (Dkt. Nos. 23, 24.)

    For the reasons that follow, I respectfully recommend that plaintiff be awarded $2,500 in statutory damages under the DMCA and $3,025 in attorneys' fees and costs.

**I.    BACKGROUND**

    **A.    Factual History**

    On or before February 24, 2015, Ward "photographed American rapper and songwriter Bobby Shmruda [sic] in Brooklyn Supreme Court." Compl. (Dkt. No. 1) ¶¶ 1, 7; *id.* Ex. A (the Photograph).[1] Ward "is the author of the Photograph and has at all times been the sole owner of

---

[1] The artist's name is usually spelled "Shmurda." *See* Compl. Ex. B; *Bobby Shmurda, a Brooklyn Rapper, is Sentenced to 7 Years in Prison*, https://www.nytimes.com/2016/10/20/nyregion/bobby-shmurda-a-brooklyn-rapper-is-sentenced-to-7-years-in-prison.html (last visited April 27, 2020).

all right, title and interest in and to the Photograph," which "was registered with the United States Copyright Office and was given registration number VA 2-079-495." Compl. ¶¶ 9-10.[2]

Ward licensed the Photograph to the New York Daily News, which, on February 24, 2015, "ran an article that featured the Photograph entitled *Rapper Bobby Shmurda's Brooklyn gun possession charge officially becomes part of conspiracy case*." Compl. ¶ 8. *See also id.* Ex. B (New York Daily News article dated February 24, 2015, featuring the Photograph). Ward's name was featured in a "gutter credit" below the Photograph. Compl. ¶ 8 & Ex. B.

Compound is a domestic limited liability company with a place of business at 1755 Broadway, New York, New York 10019. Compl. ¶ 6. According to the Complaint, "[a]t all times material, hereto, Compound has owned and operated a website at the URL www.Compoundent.com (the 'Website')." *Id.* At some point, "Compound ran an article on the Website titled *Bobby Shmurda Reportedly Involved in Gang-Related Jail Brawl*," which article prominently featured the Photograph without any credit to plaintiff. *Id*. ¶ 11. *See also id.* Ex. C (the Infringing Article).[3] According to plaintiff, "Compound did not license the Photograph from Plaintiff for its article, nor did Compound have Plaintiff's permission or consent to publish the Photograph on its Website." *Id.* ¶ 12.

---

[2] The Complaint does not include the date on which plaintiff registered the Photograph. The online records of the United States Copyright Office reflect that Jesse Ward registered "Visual Material" (including a document titled "Ward_Ackquille Pollard, better known as rapper Bobby Shmurda_2.24.15.jpg"), with registration number VA0002079495, on December 19, 2017. *See Public Catalog*, U.S. Copyright Office, https://cocatalog.loc.gov/cgi-bin/Pwebrecon.cgi?DB=local&PAGE=First (last visited April 27, 2020).

[3] The Complaint does not include the date of Compound's Infringing Article. The only date appearing in the Infringing Article itself (as attached to plaintiff's Complaint) is "May 17." Compl. Ex. C. Other reports of the referenced "gang-related jail brawl" surfaced on or about May 16, 2015. *See, e.g., Bobby Shmurda Knuckles Up for Crips vs. Bloods . . . Jailhouse Edition*, TMZ, https://www.tmz.com/2015/05/16/bobby-shmurda-rapper-prison-gang-fight-guards/ (last visited April 27, 2020).

2

### B. Procedural History

Ward filed suit on August 11, 2018. He alleges in Count I that Compound violated the Copyright Act, 17 U.S.C. §§ 106, 501, by reproducing and publicly displaying the Photograph on its Website, without permission or a license. Compl. ¶¶ 13-19. He alleges in Count II that Compound violated the DMCA, 17 U.S.C. § 1202(b), by copying the photograph from the "New York Post,"[4] "which contained a gutter credit underneath the Photograph stating 'Jesse Ward,'" and by placing it on its own Website "without the gutter credit." *Id*. ¶¶ 20-27.

On August 14, 2018, plaintiff served Compound via the New York Secretary of State. *See* Aff. of Service filed Nov. 19, 2018 (Dkt. No. 8), at 1. Compound did not appear, answer, or otherwise respond. On December 6, 2018, at plaintiff's request (Dkt. No. 9), the Clerk of Court issued a Certificate of Default (Dkt. No. 11), and on May 21, 2019, also at plaintiff's request (Dkt. No. 13), Judge Gardephe ordered Compound to show cause "why an Order should not be issued pursuant to Rule 54(b) and Rule 55(b) of the Federal Rules of Civil Procedure in favor of Plaintiff Jesse Ward" for the relief specified in that Order. Order to Show Cause (Dkt. No. 17) at 1-2. Plaintiff promptly served the Order to Show Cause and supporting papers on Compound via the Secretary of State. (Dkt. Nos. 18, 19.) On May 30, 2019, the date of the show cause hearing, Compound failed to respond or appear. (Dkt. No. 23.) Judge Gardephe therefore entered default against Compound and referred the case to me for a damages inquest.

By Order dated June 11, 2019 (Scheduling Order) (Dkt. No. 25), I directed plaintiff to file his Proposed Findings of Fact and Conclusions of Law no later than June 25, 2019, and to serve his inquest papers on defendant "through the Secretary of State and at defendant's place of

---

[4] I assume that plaintiff's reference to the "New York Post" was a drafting error, and that he intended to refer to the New York Daily News, which published the article attached to plaintiff's Complaint. *See* Compl. ¶ 8 & Ex. B.

business." *Id*. at 1. I explained that the Proposed Findings "should be supported by one or more affidavits, which may attach any documentary evidence needed to establish the proposed damages," and that: "**Each Proposed Finding of Fact shall be followed by a citation to the paragraphs of the affidavit(s) and/or pages of documentary evidence that support each such Proposed Finding.**" *Id*. at 2 (bold text in Scheduling Order).

Plaintiff submitted his Proposed Findings on June 25, 2019 (Dkt. No. 26), followed by an Affidavit of Service (Dkt. No. 27) showing that he served Compound through the Secretary of State.[5] In his Proposed Findings, plaintiff seeks "$3,000 in actual damages for copyright infringement" under 17 U.S.C. § 501, "$10,000 in statutory damages" under 17 U.S.C. § 1202(b), and $4,037.50 in attorneys' fees and $475 in costs under 17 U.S.C. § 1203(b)(5). *See* Prop. Findings ¶¶ 16-17.

Once again, Compound failed to respond.

Since neither party has requested a hearing on the issue of damages, and since defendant did not submit any written materials, I have conducted the inquest based solely upon the materials submitted by plaintiff. *See Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991) ("affidavits, evidence, and oral presentations by opposing counsel" constitute a "sufficient basis from which to evaluate the fairness of the . . . sum" without the need for a hearing on damages) (internal citations omitted); *De Lage Landen Fin. Servs., Inc. v. Universal Wilde, Inc.*, 2019 WL 4195441, at *3 n.2 (S.D.N.Y. Aug. 15, 2019) (finding that a hearing was not required because plaintiff's sworn declarations were a sufficient basis on which to make a damages calculation).

---

[5] On July 1, 2019, plaintiff submitted the declaration of his counsel Richard P. Liebowitz, stating that he was "informed by [his] New York-based process server, Gotham, that service at Defendant's principal place of business was refused by Defendant." Liebowitz Decl. (Dkt. No. 28) ¶ 5. Liebowitz did not disclose the address at which service was attempted. Nor did he submit any non-hearsay evidence (*e.g.*, a declaration from the process server) of the attempt.

4

## II.     JURISDICTION AND VENUE

Subject matter jurisdiction is properly based on 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338(a) (copyright jurisdiction). *See* Compl. ¶ 2.

I am also satisfied as to personal jurisdiction over the defendant, which is "a necessary prerequisite to entry of a default judgment." *Sheldon v. Plot Commerce*, 2016 WL 5107072, at *6 (E.D.N.Y. Aug. 26, 2016), *report and recommendation adopted*, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016). The Copyright Act does not contain its own personal jurisdiction or service provision. Thus, I must first "determine whether the defendant is subject to jurisdiction under the law of the forum state – here, New York," and then "consider whether the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014). These questions are both easily answered.

Plaintiff alleges that Compound is a New York limited liability company with its principal place of business in Manhattan, New York. Compl. ¶ 6. The website of the New York Division of Corporations and Compound's own website both corroborate this allegation. *Corporation & Business Entity Database*, New York State Dep't of State – Division of Corporations, https://www.dos.ny.gov/corps/bus_entity_search.html (last visited April 27, 2020); *Contact*, Compound Entertainment, http://compoundent.com/contact (last visited April 27, 2020). Because Compound is a New York limited liability company with its principal place of business in Manhattan, it is amenable to general personal jurisdiction throughout the state. N.Y. C.P.L.R. § 301; *Turbon Int'l, Inc. v. Hewlett-Packard Co.*, 769 F. Supp. 2d 259, 260-61 (S.D.N.Y. 2011) ("Under section 301 . . . a corporation is subject to general jurisdiction in New York if it is 'doing business' in the State."). Similarly, because Compound is "at home" in New York, the exercise of

5

such jurisdiction comports with the requirements of the Due Process Clause. *Sonera Holding*, 750 F.3d at 225 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014)) ("the place of incorporation and the principal place of business" are the "paradigm bases" for determining that a corporation is "at home" and therefore "amenable to all-purpose jurisdiction").

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). *See also* 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 1353 (3d ed. 2019) (service of process is "the means by which a federal court gives notice to the defendant and asserts jurisdiction over him"). Where the defendant has defaulted, the plaintiff must establish adequate service in order to obtain a default judgment. *See Sheldon*, 2016 WL 5107072, at *6 ("failure to adequately prove proper service of court documents . . . bars the entry of a default judgment"); *Lliviganay v. Cipriani 110 LLC*, 2009 WL 1044606, at *1 (S.D.N.Y. Apr. 14, 2009) (lack of proof of proper service "is an independent obstacle to a default judgment").

Service may be made on a domestic or foreign corporation, partnership, or other unincorporated association "that is subject to suit under a common name" by following state law in the state where the district court is located. Fed. R. Civ. P. 4(h)(1)(A), 4(e)(1). New York law permits service on a domestic limited liability company by personal delivery of the required papers (together with the statutory fee) to the Secretary of State, or any person authorized by the Secretary to receive such service, in Albany, New York. N.Y. Limit. Liab. Co. L. § 303(a). Service is complete when the Secretary of State is "so served," *id.*; there is no mailing or other follow-up requirement. Plaintiff's initial Affidavit of Service demonstrates that he complied with § 303(a) on August 14, 2018. The record therefore reflects adequate service of process.

Finally, venue is proper pursuant to 28 U.S.C. § 1400(a), which provides that a copyright action may be brought in "the district in which the defendant or his agent resides or may be found." *See also* 28 U.S.C § 1391(b)(1) (a civil action may be brought in the district "in which any defendant resides, if all defendants are residents of the State in which the district is located"). "Where the defendant is an entity, it is deemed to reside in a district where it is subject to the court's personal jurisdiction with respect to the civil action in question." *Heritage Lace, Inc. v. Underwraps Costume Corp.*, 2019 WL 3858585, at *2 (S.D.N.Y. Aug. 16, 2019) (quotation marks omitted); 28 U.S.C. § 1391(c)(2). Since Compound is subject to personal jurisdiction throughout New York State, it is deemed to reside in this district.

### III.  LIABILITY

Following a default, the court must accept all well-pleaded factual allegations in the complaint as true, except those relating to damages. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *Cotton v. Slone*, 4 F.3d 176, 181 (2d Cir. 1993); *Greyhound Exhibitgroup, Inc.* v. *E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). If those well-pleaded allegations establish the defaulting party's liability, the only remaining issue is whether plaintiff has provided adequate support for his requested damages or other relief. *Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). "Conversely, if the well-pleaded factual allegations in the complaint fail to state a claim upon which relief can be granted, no damages can be awarded, even if the post-default inquest submissions supply the missing information." *Mondragon v. Keff*, 2019 WL 2551536, at *4 (S.D.N.Y. May 31, 2019) (collecting cases), *report and recommendation adopted*, 2019 WL 2544666 (S.D.N.Y. June 20, 2019).

### A. The Copyright Act

To establish a violation of the Copyright Act, a plaintiff must demonstrate his ownership of a valid copyright and defendant's infringement – that is, copying – of original elements of the copyrighted work. *Arista Records LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010); *Malibu Media, LLC v. Doe*, 2015 WL 6116620, at *3 (S.D.N.Y. Oct. 16, 2015). Both requirements are satisfied here. The well-pleaded allegations of plaintiff's Complaint, accepted as true, demonstrate that plaintiff owned and registered a valid copyright in the Photograph, Compl. ¶¶ 7-10, and that defendant Compound infringed plaintiff's rights in the Photograph by copying, publishing, and displaying an unauthorized copy of it on Compound's Website. *Id.* ¶ 11.

### B. The DMCA

Plaintiff's well-pleaded allegations also establish a DMCA violation. 17 U.S.C. § 1202(b) states:

> No person shall, without the authority of the copyright owner or the law —
>
> (1) intentionally remove or alter any copyright management information,
>
> (2) distribute . . . copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or
>
> (3) distribute . . . copies of works . . . knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,
>
> knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

Copyright management information (CMI) includes the name of and other identifying information about the author or copyright owner of a work, "the information set forth on a notice of copyright," the "[t]erms and conditions for use of the work," and "links to such information." 17 U.S.C. § 1202(c)(1), (2), (3), (6), (7). Thus, to establish a violation under § 1202(b)(1), a

8

plaintiff must show "(1) the existence of CMI on the [infringed work]; (2) removal and/or alteration of that information; and (3) that the removal and/or alteration was done intentionally." *Banxcorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 609 (S.D.N.Y. 2010) (collecting cases).[6] The plaintiff must also establish that the removal or alteration "was done knowing that it would induce, enable, facilitate, or conceal an infringement." *Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368, 377 (S.D.N.Y. 2019).

Plaintiff alleges that the Photograph was licensed to the New York Daily News which, on or about February 24, 2015, published an article displaying the Photograph with a credit to plaintiff as the photographer, Compl. ¶ 8 & Ex. B, and that Compound, without authorization, copied the Photograph from that article, placed it on its own website without the credit to plaintiff, and thereby "intentionally and knowingly removed copyright management information identifying Plaintiff as the photographer of the Photograph." *Id.* ¶¶ 20-22. These allegations, taken as true, establish the elements of a § 1202(b)(1) violation, including that Compound acted intentionally and that it knew, or had "reasonable grounds to know," that by removing the CMI it would "induce, enable, facilitate, or conceal" its copyright infringement. *Cf. Craig v. UMG Recordings, Inc.*, 380 F. Supp. 3d 324, 338 (S.D.N.Y. 2019), *reconsideration denied*, 2019 WL 2992043 (S.D.N.Y. July 9, 2019) (plaintiff failed to establish that defendants intentionally removed CMI from copyrighted photographs where the same images "appeared without CMI in a music tour book" prior to defendants' alleged infringement and where there was no evidence that "there was any CMI on the Photographs when Defendants obtained them").

---

[6] 17 U.S.C. § 1202(a) makes it unlawful to knowingly provide or distribute "false copyright management information . . . with the intent to induce, facilitate, or conceal infringement." Since Compound stripped plaintiff's CMI from the Photograph but did not replace it with any false CMI, subsection (a) is not directly relevant here.

9

After defendant removed plaintiff's CMI from the Photograph, it displayed the altered images on the Compound website, thereby violating § 1202(b)(3) as well. *See Reilly v. Plot Commerce*, 2016 WL 6837895, at *11 (S.D.N.Y. Oct. 31, 2016) (after stripping the CMI, "[defendant] posted the altered image to [its] Website, thereby distributing a work with the knowledge that its CMI was removed in violation of subsection 1202(b)(3)"); *cf. Michael Grecco Prods. Inv. v. Function(X) Inc.*, 2019 WL 1368731, at *3 (S.D.N.Y. Mar. 11, 2019) (conclusory assertion that defendant "intentionally" published images with false CMI failed to establish a violation of § 1202(b) where there was no allegation that defendant itself altered the CMI and where plaintiff's remaining allegations were consistent with innocent as well as culpable conduct).[7]

## IV.  DAMAGES

Although plaintiff's Complaint prays for a variety of relief, both legal and equitable, in his Proposed Findings he asks only for monetary relief, specifically: (a) actual damages for copyright infringement under 17 U.S.C. § 504(b), in the amount of $3,000; (b) statutory damages for removal of CMI under 17 U.S.C. § 1203(c)(3)(B), in the amount of $10,000; and (c) attorneys' fees and

---

[7] Though plaintiff's Complaint does not disclose the date of Compound's Infringing Article, it appears to the Court that it was published on or about May 17, 2015, and therefore that plaintiff filed this action after the expiration of the three-year statute of limitations applicable to his claims. 17 U.S.C. § 507. In his Proposed Findings, plaintiff claims: "The infringement was not discovered by Plaintiff's counsel until August 2018 and Plaintiff did not know, nor any had any reason to know, that his work was being infringed by Defendant until such time as [his counsel] discovered the infringement." Prop. Findings ¶ 6. The Court need not address whether such a delayed discovery tolled the applicable statute of limitations, because Compound defaulted, "thereby waiving its affirmative defense" that plaintiff's claim is barred by the statute of limitations. *Romanowicz v. Alister & Paine, Inc.*, 2018 WL 4762980, at *4 n.3 (S.D.N.Y. Aug. 3, 2018), *report and recommendation adopted,* 2018 WL 4759768 (S.D.N.Y. Oct. 1, 2018).

10

costs under 17 U.S.C. § 1203(b)(5), in the amounts of $4,037.50 and $475.00, respectively. Prop. Findings ¶¶ 19-27.

### A. Actual Damages Under the Copyright Act

Under the Copyright Act, a copyright owner electing actual damages is entitled to recover "the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). Here, plaintiff seeks the "actual damages suffered by him," rather than any of Compound's profits. Prop. Findings ¶¶ 19-20.[8]

"In order to make out his claim that he has suffered actual damage because of the infringer's failure to pay [a licensing] fee, the owner [of an infringed copyright] must show that the thing taken had a fair market value." *On Davis v. The Gap, Inc.*, 246 F.3d 152, 166 (2d Cir. 2001), *as amended* (May 15, 2001). "The law [ ] exacts that the amount of damages may not be based on 'undue speculation.'" *Id.* (quoting *Abeshouse v. Ultragraphics, Inc.*, 754 F.2d 467, 470 (2d Cir. 1985)).

In plaintiff's Proposed Findings, he writes: "Plaintiff estimates that he would have been entitled to charge up to $1500.00 for use of the Photograph in the manner used by Defendant." Prop. Findings ¶ 20. He then concludes that "a $3,000 award is justified." *Id.* ¶ 22.

Plaintiff has not submitted any admissible evidence in support of his claim for actual damages under § 504(b). His estimate that the Photograph has a fair market value of $1,500 (because he "would have been entitled" to charge "up to" that amount) is presented only in an unsworn document signed by his attorney, rather than in a declaration or affidavit sworn to by plaintiff himself, and for this reason alone does not constitute admissible evidence. Moreover, no

---

[8] Plaintiff's Proposed Findings include a paragraph titled "Defendant's Ill-Gotten Gains," Prop. Findings ¶ 21, but that paragraph does not in fact address (or seek recovery of) Compound's profits.

11

factual basis is provided for the "estimate" that plaintiff "would have been entitled" to charge "up to" $1500 for the use of the Photograph. As a result, the Court is "unable to ascertain either the market value of the [Photograph] or the extent to which that value has been diminished, if at all, as a result of [Compound's] infringement." *Renna v. Queens Ledger/Greenpoint Star Inc.*, 2019 WL 1061259, at *4 (E.D.N.Y. Feb. 13, 2019), *report and recommendation adopted*, 2019 WL 1062490 (E.D.N.Y. Mar. 6, 2019). *Accord Pasatieri v. Starline Prods., Inc.*, 2020 WL 207352, at *4 (E.D.N.Y. Jan. 14, 2020) (rejecting claim for $2,500 in lost licensing claims, where a plaintiff's "submissions do not provide a sufficient or competent basis for the Court to rely on in determining the fair market value of the licensing fee for the Photograph, as the filings contain no points of reference that even hint at an appropriate fair market value for the licensing fee Plaintiff could or would have charged Defendant for its use of the Photograph").

Because plaintiff has failed to submit any admissible evidence in support of his estimate of actual damages, I recommend, respectfully, that his claim for actual damages under the Copyright Act be denied.[9]

---

[9] I note that attorney Liebowitz, who frequently files copyright infringement actions in this district, has repeatedly failed to submit admissible evidence in support of his clients' claims for actual damages. *See*, *e.g.*, *Pasatieri*, 2020 WL 207352, at *4; *Renna*, 2019 WL 1061259, at *4; *Jerstad v. New York Vintners LLC*, 2019 WL 6769431, at *3 (S.D.N.Y. Dec. 12, 2019) ("I then gave Plaintiff two opportunities to provide an evidentiary basis for the fair market value of the infringed photograph."), *report and recommendation adopted*, 2020 WL 58237 (S.D.N.Y. Jan. 6, 2020); *Terry v. Masterpiece Advert. Design*, 2018 WL 3104091, at *5 (S.D.N.Y. June 21, 2018) (noting that the court had "previously reminded Terry's attorney of the need for an evidentiary basis on claiming copyright damages" and "previously ordered Terry to submit 'all evidence necessary to support the amount of actual damages being claimed[]'"). In some of these cases, the court denied the unsupported request for actual damages without prejudice to renewal. *E.g.*, *Renna*, 2019 WL 1061259, at *4; *Terry*, 2018 WL 3104091, at *1. In this case, however, I specifically directed plaintiff to submit "admissible evidence" in support of his Proposed Findings. (Dkt. No. 25 at 2.) Moreover, by the time plaintiff filed his Proposed Findings, on June 25, 2019, his counsel had the benefit of several court orders in similar cases reminding him of his obligation to support his clients' claims for actual damages with admissible evidence. *E.g.*, *Renna*, 2019 WL 1061259, at *4; *Terry*, 2018 WL 3104091, at *5. I therefore do not recommend permitting plaintiff to renew his claim for actual damages with additional evidence.

### B.   Statutory Damages Under the DMCA

The DMCA provides: "At any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages for each violation of section 1202 in the sum of not less than $2,500 or more than $25,000." 17 U.S.C. § 1203(c)(3)(B).

In this case, plaintiff requests $10,000 in statutory damages, noting that "[c]ourts in this District have recently awarded $10,000 in statutory damages for a defaulting defendant's violation of § 1202(b) of the DMCA." Prop. Findings ¶ 24. For this proposition, plaintiff cites three unpublished cases, which he claims are "attached hereto as Exhibit A." *Id.* Plaintiff's Proposed Findings attach no exhibits, however, and he makes no other argument for why his request for $10,000 is justified by the facts of this case.

I conclude that this case is more akin to *Jerstad*, where the court explained:

> Plaintiff has provided no evidence to counter the possibility that Defendant merely copied and pasted the photograph from another website where the gutter credit was not located. Nor has Plaintiff provided any support, case law or otherwise, for the $10,000 figure other than attaching orders where courts adopted the $10,000 in statutory damages listed in the plaintiff's proposed order. (ECF 27-1). Plaintiff has not explained why the orders he attaches are appropriate comparisons. Accordingly, because Plaintiff would have difficulty showing actual damages for removal of the gutter credit and has not made much of an effort to support a damages figure, I recommend that the minimum of **$2,500** be awarded in statutory damages.

2019 WL 6769431, at *4 (bold text in original). *Accord Romanowicz*, 2018 WL 4762980, at *6 (awarding $2,500 where "Plaintiff's submissions supporting his request for statutory damages [were] bare-boned at best"). I therefore recommend, respectfully, that plaintiff be awarded $2,500 in statutory damages under the DMCA.

### C.   Attorneys' Fees and Costs

Plaintiff also seeks attorneys' fees and costs under the DMCA. Prop. Findings ¶ 25. The DMCA grants courts the discretion to "allow the recovery of costs by or against any party," except the United States or its officers, and to "award reasonable attorney's fees to the prevailing party."

13

17 U.S.C.A. § 1203(b)(4)-(5). In exercising that discretion, courts should consider "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 108 (2d Cir. 2014) (citation omitted).

In this case, plaintiff's claims, while bare-bones, were neither frivolous nor objectively unreasonable. Moreover, Compound has offered no defense for its violations, having defaulted. I therefore conclude that a modest award of attorneys' fees and costs is warranted. *See Jerstad*, 2019 WL 6769431, at *5 (awarding fees in "a modest amount" where plaintiff's Copyright Act claim was reasonable and non-frivolous, his "separate DMCA claim for removal of a gutter credit, while technically valid, [was] borderline reasonable," and defendant defaulted).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 186 (2d Cir. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The burden is on the fee applicant to provide evidence that "the requested hourly rates are the prevailing market rates." *Farbotko v. Clinton Cty. of N.Y.*, 433 F.3d 204, 209 (2d Cir. 2005). A "prevailing market rate" should be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Noble v. Crazetees.com*, 2015 WL 5697780, at *9 (S.D.N.Y. Sept. 28, 2015) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)) (alteration in the original).

Plaintiff requests $4,037.50 in attorneys' fees, based on a total of 9.5 hours expended in this action by attorney Liebowitz. Prop. Findings ¶¶ 25-27. Liebowitz expended 4 hours reviewing

14

the factual background of the case and drafting and filing the Complaint; 0.5 hours attending to service of the summons and Complaint; 0.5 hours drafting the request for an entry of default; and 4.5 hours drafting plaintiff's default judgment papers. *Id.* ¶ 27. He requests to be reimbursed for those hours at a rate of $425 per hour, noting that he graduated from law school in 2015 and has "personally filed over 1000 copyright infringement lawsuits in [the] S.D.N.Y. and E.D.N.Y. since January 2016." *Id.* ¶ 26.

I conclude that the requested hours are excessive and must be reduced. First, plaintiff's submissions in this action mirror the papers that counsel has filed in many of the "over 1000 copyright infringement lawsuits" referenced in the Proposed Findings. *See, e.g., Romanowicz*, 2018 WL 4762980, at *7 (noting that portions of plaintiff's inquest submissions "appear[ ] to have [been] copied from filings in his many other copyright cases"). Second, as noted above, the original Complaint contains a number of drafting errors; the Proposed Findings are unsupported by any evidence establishing plaintiff's actual damages[10]; and counsel failed to comply with this Court's order to provide proof that he served the Proposed Findings on Compound at its principal place of business. Third, attorney Liebowitz's time records reflect that he spent time on various tasks, such as service of process, that could have been handled by a paralegal or clerk at a lower hourly rate. *See Jerstad,* 2019 WL 6769431, at *6 ("Mr. Liebowitz spent another 30 minutes to 'process service,' which would seem to be the task of a paralegal rather than the managing partner.").[11] However, I note that plaintiff's fee request is conservative in one respect: he does not request reimbursement for the hours expended by his counsel in connection with preparing and filing his

---

[10] *See, e.g., Jerstad,* 2019 WL 6769431, at *6 ("As shown above, Plaintiff's submissions lack much of the relevant factual information," including "Plaintiff's typical license fees.").

[11] Oddly, plaintiff's counsel expended precisely the same number of hours, on almost precisely the same tasks, in *Jerstad*. *See* Memorandum of Law, *Jerstad v. New York Vintners LLC*, No. 1:18-CV-104870-JGK-OTW (S.D.N.Y. May 28, 2019), ECF No. 27, ¶ 3.

15

(albeit deficient) inquest submissions. I therefore conclude that plaintiff's requested hours should be reduced only moderately, from 9.5 hours down to 7.5 hours.

I also conclude that attorney Liebowitz's requested hourly rate of $425 should be reduced to $350, the "hourly rate typically awarded" to Mr. Liebowitz in this district, for substantially the reasons explained in numerous other recent cases in this district. *See*, *e.g.*, *Jerstad*, 2019 WL 6769431, at *5 (collecting cases). This yields a total attorneys' fee award of $2,625.

Finally, plaintiff requests reimbursement for costs in the amount of $475, consisting of this Court's $400 filing fee and a $75 "[p]ersonal service fee," Prop. Findings ¶ 27, but provides no documentation in support of his request. As in *Jerstad*, "[b]ecause Plaintiff declined to provide any evidence of costs, the Court [may] take judicial notice of the $400 filing fee, as reflected on the docket, but [should] deny any additional costs." *Jerstad*, 2019 WL 6769431, at *5 (citing *Mango*, 397 F. Supp. 2d at 378).

## V.  CONCLUSION

For the reasons set forth above, I respectfully recommend that plaintiff Ward be awarded (a) statutory damages under the DMCA, 17 U.S.C. § 1203(c), in the amount of $2,500; and (b) attorneys' fees and costs under the DMCA, 17 U.S.C. § 1203(b)(5), in the amount of $3,025.[12]

Plaintiff is directed to promptly serve a copy of this Report and Recommendation on defendant, and to file proof of such service.

Dated: New York, New York
       April 27, 2020

_____
**BARBARA MOSES**
**United States Magistrate Judge**

---

[12] Ward does not request prejudgment interest, which in any event would not be warranted where, as here, the plaintiff requested a statutory award. *See Reilly*, 2016 WL 6837895, at *12.

16

## NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from this date to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). *See also* Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Hon. Paul G. Gardephe at 540 Foley Square, New York, New York 10007, and to the chambers of the undersigned magistrate judge. Any request for an extension of time to file objections must be directed to Judge Gardephe. **Failure to file timely objections will result in a waiver of such objections and will preclude appellate review**. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).